[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR ARTICULATION.CLARIFICATION AND CORRECTION POST JUDGMENT
The Defendant's Motion for Articulation, Clarification and Correction is granted. A Corrected Memorandum of Decision is attached.
CORRECTED MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. These litigants were married June 25, 1993 in Stratford, Connecticut. They have lived in Connecticut for at least twelve months prior to the commencement of this dissolution action. There are two children issue of this marriage: Megan McGrath, born November 29, 1994 and Brian McGrath, born November 13, 1996. The children currently reside with their mother. This is the plaintiffs second marriage, the defendant's first. Both parties enjoy good health. The marriage has broken down irretrievably and a decree of dissolution will enter on that ground.
The principal cause for the breakdown of the marriage was the fact that this couple could not function as an independent marital unit. Their failure to resolve basic philosophical differences concerning family dynamics and a lack of communication led to a deterioration of their personal relationship.
Facts of the Case[1]
These litigants met in 1998, shortly after the plaintiff lost her first husband in a car accident. They began living together in 1999. At the time they met, the defendant was still a college student. The plaintiff encouraged the defendant in his career efforts.
The plaintiff is a thirty-eight year old registered nurse. At the time of the marriage, she was employed at Bridgeport Hospital. She subsequently secured a position as a school nurse for the Wilcox Technical School in Meriden, Connecticut. At the time of the dissolution CT Page 959 trial, the plaintiff had a net income, excluding child support payments, of approximately $625.00 per week.
The defendant is a thirty-eight year old business system manager with American Skandia Life Assurance Corporation, an investment company. He began working at that company in December 1992, shortly before he secured his Bachelor of Arts degree in finance. The defendant's position at American Skandia is not secure. The corporation recently eliminated over half its workforce. The defendant's own staff had decreased even more. Although the defendant's base salary, currently a net income of $937 weekly, has remained stable, the company discontinued bonuses and profit sharing until such time as the corporate finances improve.
The couple's two minor children, ages 5 and 7, are relatively healthy. They currently attend St. Mark's School in Stratford, Connecticut. After school day care is available. Citing the cost of private schooling, the defendant would prefer that the children attend public school. The plaintiff feels that the children would be more comfortable in their current setting, an environment to which they have already adjusted. To offset the cost of the private education, the plaintiff seeks alimony.[2]
The children reside with their mother. Under an existing schedule, the defendant visits the children Tuesday and Thursday, from 6:00 p. m. to 8:00 p. m. He also visits the children on an alternating weekend schedule. The plaintiff wishes to modify the existing parenting schedule in a manner that would require that on weeknights the defendant pick up the children at their daycare facility before 5:30 p. m.[3]
Additionally, the plaintiff desires that the children return home before 8:00 p. m. in order that they prepare for bed at a reasonable hour. Finally, the plaintiff wants the defendant to have overnight parenting with his children on his designated weekends. Unfortunately, the defendant is currently residing in a spare bedroom rented him by a co-worker. He does not have the private requisite facilities to accommodate overnight visits.
As a result of a settlement arising from her first husband's tragic death, the plaintiff acquired funds with which she purchased the marital home on Lyncrest Drive in Stratford.[4] The parties lived together at that property from 1999 to the date of their separation in January 2002. During the course of their marriage, the couple was not burdened with mortgage payments, Nevertheless, they shared the cost of taxes, insurance, maintenance, general repair and home improvements.[5] The home has a current value of $267,000.
In the later years of their marriage, the parties purchased two CT Page 960 time-share vacation properties, one in Las Vegas and one in Orlando. Both of these properties were financed through credit card charges. When asked to select one of the properties, the plaintiff chose to retain the Florida vacation location.
There is some credit card debt. The debt on existing cards was a result of successive consolidation loans, balance transfers, plus major purchases that included the two aforementioned timeshares. Although the plaintiff claims she had no personal credit card debt, she is responsible for one half of the charges on the joint family card. On an individual card, the plaintiff charged furniture re-upholstery. Additionally, the plaintiff is responsible for a debt to Brancas Auto Center for work done on the transmission of her car.[6]
Both parties have pension plans. The defendant's, accumulated throughout the marriage, has a value of approximately $77,000. There is incomplete evidence concerning the value of the plaintiffs two pension plans, one from Bridgeport Hospital and, one resulting from her employment with Wilcox Technical School.[7] The parties have some savings and investment accounts. The plaintiffs account with the Chase Bank was funded primarily through assets secured after the death of her first husband. The defendant's Ameritrade account began with monies the defendant received from a workmen's compensation settlement that he received prior to the marriage.
The plaintiff asserts that the defendant's temper caused the marital breakdown. She cites a generalized anger that made discussion difficult. Although the court accepts the testimony that the defendant was often angry, it rejects the notion that the plaintiff was totally without fault. The plaintiff contributed to the marital tension. Furthermore, although the defendant made an effort to resolve the marital tension, the plaintiff chose to attend private counseling rather than reconcile her differences with her husband. She never understood the basis for the defendant's displeasure.
The court finds that the plaintiff refused to act as a responsible adult, wife and caretaker. Instead, she relied upon her parents who visited the Lyncrest home, virtually daily. They assisted the plaintiff with daily chores such as housekeeping and shopping. They ate dinner at their daughter's house.[8] They remained there after the defendant returned home. They went on vacation with the litigants. When asked to choose between her parents and her husband, the plaintiff chose her parents.
Since their children were born, the plaintiff and defendant were rarely CT Page 961 alone. The plaintiff relied upon her parents' assistance in her daily activities. Although the plaintiffs parents might have been well intentioned, the defendant wanted he and his wife to raise their children alone. Unfortunately, under the circumstances at the time of the separation, the family had no privacy. The plaintiffs parents, with her encouragement, were too intrusive.
II. Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The parties shall have joint legal custody of the minor children of the marriage: Megan McGrath, born November 29, 1994 and Brian McGrath, born November 13, 1996. The primary residence of the child shall be with the plaintiff.
3. The defendant shall have reasonable, flexible and liberal rights of visitation. That contact shall include Tuesday and Thursday evenings from 6:30 p. m. to 8:00 p. m. and visits every alternate weekend.
4. Until the defendant secures a separate personal residence, those visits shall be every alternate weekend on Saturdays and Sundays from 10:00 a.m. to 8:00 p. m.
5. Once the defendant has the facilities to accommodate overnight visits, the parenting schedule shall change to include time from Friday evening at 7:00 to Sunday evening at 5:00. If his weekend visitation is followed by a federal holiday, the defendant shall return the children before Monday evening at 5:00.
6. The defendant shall be solely responsible for the costs associated with the transportation of the child.
7. The parties shall share equally responsibility for all physical transportation.
8. The defendant shall have the option of having the children three separate weeks of uninterrupted time during the summer school CT Page 962 vacation and will notify the plaintiff in writing by April 30th of the weeks that he intends to exercise that access.
9. The parties shall alternate the following legal holidays and school vacations with the plaintiff having Schedule A for odd-numbered years and Schedule B for even-numbered years. The sharing of said holidays and school vacations shall supersede the regular visitation schedule. Said holidays shall be designated from 9 a.m. until 7 p. m. unless otherwise agreed by the parties or otherwise designated herein. This schedule may be modified upon agreement of the parties.
SCHEDULE A
Easter weekend
Spring school vacation
Memorial Day weekend
Christmas vacation until 6:00 p. m. on December 26th
SCHEDULE B
Winter school vacation
Independence Day
Labor Day weekend
Thanksgiving weekend
 Christmas vacation as of 6:00 p. m. on December 26th until 6:00 p. m. on New Year's Day.
10. Regardless of the regular access schedule, the plaintiff shall have the child with her every Mother's Day and the defendant shall have the child with him every Father's Day. Said day is designated to be from 9 a.m. until 7 p. m. unless otherwise agreed by the parties.
11. Each parent is expected to adapt to the changing needs and interests of the minor children, and to arrange his or her schedule to accommodate the minor children's school activities, sport events, birthday party invitations, etc., remembering that such activities are an ordinary part of the children's development and that the minor children will enjoy those activities and benefit from them. CT Page 963
12. The defendant shall provide to or for the benefit of the minor children such medical and dental insurance as may be available through his employment, and the plaintiff shall reimburse the defendant for one-half of the cost thereof. In the event the defendant does not have such insurance available to him, the plaintiff shall provide to or for the benefit of the minor children like insurance as may be available through her employment, and the defendant shall reimburse the plaintiff for one-half of the cost thereof. The parties shall each be responsible for one-half of the cost of any uncovered or unreimbursed medical, dental, psychological or therapy expenses as may be reasonably necessary to or for the benefit of the minor children. Any unreimbursed medical, dental, psychological or therapy expenses incurred on behalf of the minor children shall be shared equally by the parties.
13. The defendant shall provide to or for the benefit of plaintiff such medial and dental insurance as may be available through his employment for so long as such COBRA benefits are available. The plaintiff shall be fully responsible for the cost of these benefits plus her uncovered or unreimbursed medical, dental, psychological or therapy expenses
14. Neither party shall pay alimony to the other party.
15. In accordance with the child support guidelines, the defendant shall pay to the plaintiff child support in the amount of two hundred and fifty ($250.00) dollars per week, plus forty-two (42%) percent of the cost of any work-related day care expense. This order shall continue until youngest child completes the twelfth grade or attains the age of 19, provided that such child is a full time high school student and resides with the plaintiff, and if not, then until that minor child of the marriage attains the age of 18. The defendant shall pay his responsible share of the day care expenses directly to the day care provider.
16. For tax purposes the defendant may claim Brian and the plaintiff may claim Megan as a dependent.
17. An immediate wage execution shall enter.
18. There is no evidence that the parties have agreed to share the cost of post-secondary education. Consequently, this court does not enter an educational support order. CT Page 964
19. The plaintiff shall retain sole possession of the marital home located on Lyncrest Drive in Stratford, Connecticut. The plaintiff shall be responsible for, and shall indemnify the defendant against, payment of property taxes and insurance and shall be allowed in full any tax deductions therefore.
20. The plaintiff shall retain sole possession of the Orlando, Florida time-share. The defendant shall retain sole possession of the Las Vegas, Nevada time-share.
21. All of the furniture and furnishings in the marital home, with the exception of the defendant's personal property, effects and papers, are awarded to the plaintiff. Additionally, the parties shall equally divide the family memorabilia. The plaintiff shall arrange for the return of the defendant's possessions. Any disputes regarding the distribution of this property shall be referred to the family relations office for mediation and possible resolution. This court retains jurisdiction to resolve any disputes concerning distribution of personal property.
22. The plaintiff is awarded all interest in the 1994 Ford Taurus listed on her financial affidavit. Additionally, the plaintiff is awarded exclusive interest in the two Chase Savings accounts listed on her financial affidavit.
23. The defendant is awarded all interest in the 1985 Toyota truck listed on his financial affidavit. Additionally, the defendant is awarded exclusive interest in the Sikorsky Credit Union account, the Ameritrade account, and the Janus account listed on his financial affidavit.
24. Each party shall maintain their separate interest in their pension plan accounts.
25. The defendant shall maintain the custodial accounts currently held for the benefit of the minor children.
26. The parties shall be solely responsible for the credit card debt listed on their respective financial affidavits.
27. The plaintiff is solely responsible for any amounts due Branca's Auto center for transmission repair for the plaintiffs 1995 Taurus.
28. Each party shall be responsible for his/her own attorneys fees. CT Page 965
29. For as long as the defendant shall have a support obligation, he shall cause to have in force and effect a life insurance policy on his own life in the sum of at least $100,000, naming the plaintiff as the beneficiary thereof as and for trustee for the minor children. The defendant shall provide to the defendant satisfactory evidence thereof within thirty (30) days and at such other times as may be reasonably requested by the plaintiff.
30. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
31. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
 ___________________ JULIA DiCOCCO DEWEY, JUDGE